## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MIA BENNETT,

        Plaintiff,

vs.

HURLEY MEDICAL CENTER,

        Defendant.

Case No. 21-10471
Judge Paul D. Borman
Mag. Judge David R. Grand

| NICHOLAS ROUMEL (P37056) | MICHAEL W. EDMUNDS (P55748) |
|---|---|
| Nacht & Roumel, PC | Gault Davison, PC |
| Attorney for Plaintiff | Attorney for Defendant |
| 101 N. Main Street, Ste. 555 | 8305 S. Saginaw, Ste. 8 |
| Ann Arbor, MI 48104 | Grand Blanc, MI 48439 |
| (734) 663-7550 | (810) 234-3633 |
| nroumel@nachtlaw.com | medmunds@edmundslawoffice.com |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves this Court for summary judgment, pursuant to Fed. R. Civ. P. 56, and in support states as follows:

1. Plaintiff is a nursing student at the University of Michigan-Flint.

2. Plaintiff alleges that she suffers from a panic disorder which constitutes a disability under the American's with Disabilities Act (ADA). 42 U.S.C. §12131-12133.

3. She claims she is disabled within the meaning of the ADA and the Persons with Disabilities Civil Rights Act (PWDCRA). MCL 37.1301 *et. seq.*

4. Plaintiff alleges that she needs her dog Pistol, a service animal, to let her know when a panic attack is imminent so she can take her medication.

5. Plaintiff started a clinical rotation at Defendant Hurley Hospital in September 2020.

6. Before starting her rotation, she requested an accommodation to bring Pistol with her to Hurley, which Hurley granted.

7. On the first day of her rotation, an employee and a patient experienced an allergic reaction to Pistol, one of whom had to receive medical attention.

8. Hurley subsequently learned that there was a second employee who worked the same shift who also had a strong allergy to dogs.

9. Hurley withdrew the original accommodation but offered a different

2

accommodation which would still give Plaintiff access to Pistol during her rotation, but she refused and filed this lawsuit.

10. Plaintiff has filed suit under the ADA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701, and the PWDRCA.

11. She claims that Hurley failed to accommodate her, and discriminated against her on the basis of her disability.

12. Her failure to accommodate claims should be dismissed because Pistol does not constitute a service animal under the statutes, she does not need an accommodation, the requested accommodation would require Defendant to fundamentally alter the nature of the rotation, because Defendant has a right to impose legitimate safety requirements necessary for the safe operation of its services, programs, and activities, and because Plaintiff failed to participate in the interactive process.

13. Her discrimination claims should be dismissed because Defendant did not discriminate against Plaintiff on the basis of her disability.

14. Defense counsel discussed this motion with Plaintiff's attorney on multiple occasions, most recently at the end of December 2021, but Plaintiff was unable to concur in the relief sought.

WHEREFORE, Defendant requests that this case be dismissed with prejudice, and that it be awarded costs and attorney fees.

Dated: <u>March 31, 2022</u>                      <u>/s/ *Michael W. Edmunds*</u>
                                        MICHAEL W. EDMUNDS P55748
                                        Gault Davison, PC
                                        Attorney for Defendant
                                        8305 S. Saginaw St., Ste. 8
                                        Grand Blanc, MI 48439
                                        (810) 234-3633
                                        medmunds@edmundslawoffice.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MIA BENNETT,

        Plaintiff,

vs.

HURLEY MEDICAL CENTER,

        Defendant.

Case No. 21-10471
Judge Paul D. Borman
Mag. Judge David R. Grand

| NICHOLAS ROUMEL (P37056) | MICHAEL W. EDMUNDS (P55748) |
|---|---|
| Nacht & Roumel, PC | Gault Davison, PC |
| Attorney for Plaintiff | Attorney for Defendant |
| 101 N. Main Street, Ste. 555 | 8305 S. Saginaw, Ste. 8 |
| Ann Arbor, MI 48104 | Grand Blanc, MI 48439 |
| (734) 663-7550 | (810) 234-3633 |
| nroumel@nachtlaw.com | medmunds@edmundslawoffice.com |

## **DEFENDANT'S BRIEF IN SUPPORT OF**
## **MOTION FOR SUMMARY JUDGMENT**

## STATEMENT OF ISSUES PRESENTED

1.   Whether Plaintiff has been denied participation in, or denied the benefits of her rotation at Hurley?

2.   Whether Plaintiff was excluded from her rotation?

3.   Whether Plaintiff needed an accommodation?

4.   Whether Pistol is a service animal?

5.   Whether allowing Plaintiff to bring Pistol to her rotation would fundamentally alter the nature of the rotation?

6.   Whether Hurley's refusal to let Plaintiff bring Pistol to her rotation was a legitimate exercise of Hurley's right to impose legitimate  requirements necessary for the safe operation of its services?

7.   Whether Plaintiff appropriately engaged in the interactive process?

8.   Whether Hurley discriminated against Plaintiff on the basis of her disability?

# CONTROLLING AUTHORITY

The ADA
42 U.S.C. §12132.

Requirement to accommodate.
28 C.F.R. 35.130(b)(7)(i).

Service animals allowed everywhere.
28 C.F.R. 35.136(g).

Definition of service animal.
28 C.F.R. 35.104.

the interactive process
*Lafata v. Church of Christ Home for the Aged*, 325 FedAppx. 416 (6th Cir. 2009).

intentional discrimination
*Tucker v. Tennessee*, 539 F.3d 526 (2008).

The Rehabilitation Act and the ADA are interpreted in a similar fashion.
Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901 (6th Cir. 2004).

The ADA and the PWDCRA are interpreted in a similar fashion.
*Mote v. City of Chelsea*, 252 F.Supp.3d 642 (E.D. Mich. 2017).

# TABLE OF CONTENTS

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

CONTROLLING AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    I.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    II.   The ADA claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        A.   Plaintiff has not been denied participation in, or denied the benefits of her rotation at Hurley. . . . . . . . . . . . . . . . . . . . . . 11
           1.   Plaintiff was not excluded from her rotation. . . . . . . . . 11
           2.   Plaintiff doesn't need an accommodation. . . . . . . . . . 11
           3.   Pistol is not a service animal. . . . . . . . . . . . . . . . . . . 13
           4.   Allowing Plaintiff to bring Pistol to her rotation would fundamentally alter the nature of the rotation. . . . . . . . 14
           5.   Pistol jeapardized the health and safety of patients and staff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           6.   Plaintiff failed to appropriately engage in the interactive process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        B.   Hurley did not discriminate against Plaintiff. . . . . . . . . . . . 19
    III.  The Rehabilitation Act claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    IV.  The PWDCRA claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

INDEX OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  A

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  B

# INDEX OF AUTHORITIES

1.   <u>Federal Statutes</u>

42 U.S.C. §12132. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. §12134. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2.   <u>US Supreme Court Cases</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). . . . . . . . 9

3.   <u>Federal Circuit Court Cases</u>

*Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . 22

*Combs v. Int'l Ins. Co.*, 354 F.3d 568 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 9

*Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . 20

*EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789 (7th Cir. 2005). . . . . . . . . . . . . . . . 18

*Hamm v. City of Gahanna*, 109 Fed.Appx. 744 (6th Cir.2004). . . . . . . . . . . . 20, 21

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195 (6th Cir. 2010). . . . . . . . . . . . . . . 18

*Kendall v. Hoover Co.*, 751 F.2d 171 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . 8

*Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862 (6th Cir. 2007).. . . . . . . . . 17

*Lafata v. Church of Christ Home for the Aged*, 325 FedAppx. 416 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996). . . . . . . . . . . . . . 18

*Tucker v. Tennessee,* 539 F.3d 526 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000). . . . . . . . . . . . . . . 17

4.   <u>Federal District Court Cases</u>

*Gleed v. AT&T Services, Inc.*, unreported, 2014 WL 3708546 (E.D. Mich. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mote v. City of Chelsea*, 252 F.Supp.3d 642 (E.D. Mich. 2017). . . . . . . . . . . . . . 22

*Pool v. Riverside Health Servs.,* 1995 US Dist Lexus 12724 (D. Kan, 1995). . . . 17

5.   <u>Federal Regulations</u>

28 C.F.R. 35.104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R. 35.130(b)(7)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

28 C.F.R. 35.130(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 C.F.R. 35.136(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INTRODUCTION

Plaintiff is a nursing student who did a rotation at Defendant Hurley Medical Center ("Hurley").  She wanted to bring a service dog with her to her rotation at the Hospital. Her request was initially granted, but then withdrawn after an employee and a patient suffered an allergic reaction to her dog, and another employee was discovered to be allergic.

She has sued under the American's with Disabilities Act (ADA, 42 U.S.C. §12131-12133), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §701), and the Persons with Disabilities Civil Rights Act (PWDCRA, MCL 37.1301 *et.* seq.). She alleges that Hurley failed to accommodate her disability and discriminated against her because of her disability.

## STATEMENT OF FACTS

In the fall of 2020, Plaintiff was a nursing student at the University of Michigan-Flint.  Nursing students are required to supplement their classroom learning with "on hands" clinical training called rotations.  The subject matter of the rotation will relate to the classes they are taking.  (Exhibit 1, Plaintiff's deposition, p 9:4-19) (Exhibit 2, Jennifer McDermitt deposition, p 19:9-12).

Hurley is a city-owned 443-bed public teaching hospital located in the City of Flint with over 2,600 employees.  Hurley provides  the region's only Level 1 Trauma

1

Center, Burn Unit, Neonatal Intensive Care Unit, Pediatric Intensive Care Unit, and Pediatric Emergency Department. (Exhibit 9, Affidavit of Peter Bade).

Hurley has a relationship with nursing schools throughout the state which allows the nursing schools to conduct rotations at Hurley. The rotation consists of a small group of nursing students for a short period of time, usually once a week for a few hours. The nurses are instructed by (and supervised by) a Professor from the nursing school, not Hurley. (Exhibit 2, pp 20:20-21:19). Each rotation is assigned to a particular part of the hospital, depending on the nature of the rotation.

Plaintiff applied for a rotation that was scheduled to start in September 2020 at Hurley. She and all of the other nursing students in her class were assigned to two floors, 7East and 9East. One of these floors is a general medical floor which frequently contains patients who are unconscious and post-surgical patients. The other floor is primarily a floor for patients who are suffering from cancer. (Exhibit 2, p 12:7-13; p 13:11-18) Kidney dialysis is done on 7East, it can't be done on 9East. (Exhibit 7, Teresa Bourque deposition pp 23:24-24:4-13)

Plaintiff claims to suffer from a panic disorder. She can take medicine prophylactically to avoid experiencing a panic attack, but she doesn't like to take it because it makes it so she doesn't feel alert. (ECF No.1 PageID.3, para 9) So, instead, she waits until she gets a panic attack before she takes her medication, which

2

typically takes 5 to 10 minutes to work. (Exhibit 1, p 19:14-15).

Plaintiff has a dog named Pistol. She got him as a puppy 9 years ago. (Exhibit 1, p 14:12-16). He has been through obedience school. When Plaintiff was diagnosed with her panic disorder in 2017, (Exhibit 1, p 15:11-16), she decided to self-train Pistol to recognize when a panic attack was imminent so he could warn her so she could take her medicine. (Exhibit 1, pp 14:21-15:10). She has learned that there are certain physical manifestations that she will experience before a panic attack sets in. These include such things as nervous ticks, rubbing her legs, scratching, pulling at her hair, drumming her fingers, and tapping her fingers. (Exhibit 1, p 20:17-25). So, she would fake these symptoms of her panic attack and then reward Pistol with a treat when he would provide a cue to her, like putting his paw on her, to let her know that he had recognized some of these symptoms. (Exhibit 1, pp 21:9-22:5). In this way the Plaintiff claims that Pistol has been "trained" to recognize panic attacks.

According to the Plaintiff, Pistol can recognize that a panic attack is coming about 15 minutes before it arrives, giving her a chance to take her medicine. There is no evidence at this point that there are any consequences to a delay in taking her medication except for the fact that she will experience a panic attack until the medicine sets in. In other words, there is no evidence that a delay in recognizing that a panic attack is impending will make the medicine any less effective. (Exhibit 1, p

23:3-17).

In advance of starting her rotation, Plaintiff located Hurley's ADA coordinator, Summer Jenkins, and asked Hurley to accommodate her by allowing her to bring Pistol with her during her rotation. The rotation was once a week for four hours for six weeks. Hurley has a comprehensive ADA compliant policy. (Exhibit 5). Ms. Jenkins reviewed Plaintiff's request, reviewed the ADA policy, *then granted the request*. Plaintiff then duly reported for her first day of her rotation with Pistol.

Almost immediately, an employee on the floor who had not seen Pistol and did not know that a dog would be on the floor reported experiencing a severe allergic attack which progressed to the point where her throat started to close up and she had trouble breathing. (Exhibit 3, Tarnesa Martin deposition, pp 12:13-13:17). She reported it to her manager who sent her to a medical clinic where employees receive medical attention, who sent her home. Due to a staffing shortage, the employee was unable to be replaced so the manager worked the balance of the missing employee's shift. (Exhibit 3, p 15:5-16).

Within minutes after the complaints from the employee, a patient, who had also not seen the dog, asked, "is there a dog in here?" She then explained that she had allergies to dogs. (Exhibit 3, p 20:21-24; pp 21:9-25-22:1) The manager quickly took a poll of the remaining employees and discovered that one other employee also had

4

allergies to dogs. (Exhibit 3, pp 18:5-19:6)  So there was one employee with a potential allergy to Pistol, and another employee and a patient who both had an allergic reaction to Pistol.  Plaintiff was asked to take Pistol home for the day while Hurley tried to figure out what to do.

The accommodation was withdrawn.  In order to come up with a different accommodation for the Plaintiff which would avoid the problems that had arisen with the first one, and in conjunction with the hospital's Standard Practice Policy, (Exhibit 4), Ms. Jenkins spoke to the Law Department, the HR Department, the Nursing Managers, and the doctors in charge of the floors where Plaintiff's rotation was scheduled.  (Exhibit 5, Summer Jenkins deposition, pp 23:16-24:9).

Some were concerned about *patients* who might be immunocompromised and allergic to Pistol, and who might not even be able to tell Hurley that they were having an allergic reaction.  As a Trauma Hospital, many of the patients on the floors where Plaintiff was assigned arrive unconscious, and can't be screened for dog allergies. (Exhibit 9).  In addition, some of them are post surgical patients. (Exhibit 3, pp 31:24-32:9).  In addition, dogs transmit numerous zoonotic pathogens, including viruses, bacteria, parasites and fungi.  In fact, it is well established that coronaviruses can be transmitted from dogs to humans. (https://academic.oup.com/cid/article/74/3/446/6278597)

Some were concerned about continuity of care.  (Exhibit 7, p 24:24-25:19) That's the idea that a patient gets better care when seen by the same set of nurses, who get to know the patient, as well as the patient's unique set of circumstances. Substituting a nurse for part of a shift once a week poses safety concerns.  The nurses were also worried about hygiene, especially hand washing. (Exhibit 6, CDC Morbidity and Mortality weekly report, October 25, 2020, Vol. 51, No. RR-16).[1]

Some were concerned about *employees* having allergic reactions to Pistol. (Exhibit 5, pp 22:16-23:21).  Staffing was a problem.  Employees cannot just be moved in and out of different floors and departments.  (Exhibit 7, p 24:10-13) Hurley can't just take a nurse off from a cancer floor or a kidney dialysis floor and send him or her to the maternity ward, and can't move patients who are on those floors for a particular reason. (Exhibit 3, p 31:10-19).  In addition, this occurred in the middle of the pandemic, when there were staffing shortages. (Exhibit 9).  Finally, Hurley is a union hospital.  It can't just move union employees from one department to another without following the limitations in the collective bargaining unit. (Exhibit 3, pp 30:21-31:4)(Exhibit 7, p 24:15-23) (Exhibit 9)   In fact, there is a specific "pool" of employees who are on call to be used when staff is short around the hospital, but that

---

[1] The Centers for Disease Control emphasizes that proper hand hygiene is a fundamental safety issue in hospitals, and Hurley's accreditation as a Level 1 Trauma Center would be significantly jeopardized by having a nursing student go from room to room holding a leash.

doesn't guarantee that someone with the right qualifications will always be available. (Exhibit 3, pp 29:20-30:8).

Hurley decided to offer Plaintiff what it considered to be a compromise, an accommodation that was different than what the Plaintiff had requested but which was still reasonable.  It offered to allow Plaintiff to bring Pistol to Hurley as long as she kept him crated in a room that Hurley was willing to set aside specifically for Pistol on the floor where Plaintiff was assigned.  She was offered 15 to 20 minutes with the dog every hour she was in the hospital; she was offered the ability to visit with Pistol in that room as often as she needed; and she was allowed to take Pistol outside as he needed.  The compromise was meant to allow Pistol to help Plaintiff but minimize the potential that Pistol would make employees and patients sick walking around freely. (Exhibit 5, pp 27:14-28:28).  This proposal was not acceptable to the Plaintiff.

There are special coats that are made to be worn by dogs to minimize the release and spread of their dander, which is often what causes the allergies.  Plaintiff suggested that she try bringing Pistol with one of these "shed defenders." (Exhibit 1, p 29:6-23). However, she did not know whether they were made in a size that would fit Pistol.  She emailed Summer Jenkins to let Summer know that she was going to see if her mother could sew, modify, or otherwise make one of these anti-shed coats

7

for Pistol. (Exhibit 1, pp 29:20-30:2).  In the last communication between the two of
them, Summer said to let Summer know what Plaintiff was able to find out about the
possibility of getting a shed defender, but in the meantime Pistol couldn't come back
unless Plaintiff crated him in a closed room. (Exhibit 1, pp 32:20-33-14). (Exhibit 8,
email); (Exhibit 5, at pp 26:23-28:20).  Plaintiff never responded, and so at this time
we still don't know whether a shed defender is available for Pistol. (Exhibit 1, pp
33:17-34:11).  Plaintiff finished her rotation without Pistol.  (Exhibit 1, pp 11:22-
12:6).

## ARGUMENT

### I.    Standard of Review

Summary judgment is appropriate when the moving party demonstrates that
there is no genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986); Fed. R. Civ. P. 56(a).  A fact is material for purposes of a motion for
summary judgment where proof of that fact would have the effect of "establishing or
refuting one of the essential elements of a cause of action or defense asserted by the
parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A dispute is
genuine "if the evidence is such that a reasonable jury could return a verdict for the
non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
When ruling on a motion for summary judgment, "the Court must draw all reasonable

inferences in favor of the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the non-movant must produce enough evidence to allow a reasonable jury to find in the non-movant's favor, and the "mere possibility of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004).

II.     <u>The ADA claim.</u>

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  Defendant admits that it is a public entity, and for the purposes of this motion, will not dispute whether Plaintiff is a qualified individual with a disability.  Thus, there are two issues presented: 1) whether Plaintiff has been denied participation in, or denied the benefits of her rotation at Hurley, and 2) whether Hurley discriminated against her.

There is some confusion in the 6th Circuit regarding whether the failure to accommodate is a separate cause of action under the ADA, or a subspecies of discrimination.   Rather than litigate that issue, Defendant will assume for the purposes of this motion that there is a separate cause of action for failure to accommodate and address both claims separately.

9

The ADA doesn't specifically reference a duty to accommodate under Title II, but it grants the Attorney General authority to promulgate regulations to implement the provisions of the ADA, 42 U.S.C. §12134, and the DOL has issued regulations requiring public entities to accommodate persons with disabilities:

> "A public entity shall make reasonable modifications and policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

28 C.F.R. 35.130(b)(7)(i).

In this case, the Plaintiff argues that Hurley should make a reasonable modification (accommodation) to its policies, practices, and procedures to allow her to take Pistol with her to the Hospital.  Once again, Title II of the ADA doesn't say anything about service animals or dogs, but the regulations do.  The regulations state that individuals with disabilities shall be permitted to be accompanied by their "service animals" in all areas of a public entity's facility where members of the public or invitees are allowed to go.  28 C.F.R. 35.136(g).  The regulations also define service animal under Title II, and in doing so refers only to dogs:

> "Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability."

28 C.F.R. 35.104.

10

A.   <u>Plaintiff has not been denied participation in, or denied the benefits of her rotation at Hurley.</u>

Hurley advances six arguments in support of its position that Plaintiff has not been denied participation in, or denied the benefits of her rotation at Hurley.

1.   <u>Plaintiff was not excluded from her rotation.</u>

The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." By definition, Plaintiff was not excluded from participating in the rotation. She attended and completed the rotation! It was Pistol who was excluded. And Plaintiff has never claimed that her experience in the rotation was diminished in any respect by not having Pistol present. She has not, for example, claimed that she experienced a panic attach during the rotation.

2.   <u>Plaintiff doesn't need an accommodation.</u>

Plaintiff has the ability to prevent panic attacks with her medicine. She chooses not to take it until a panic attach is imminent, which is her choice, but *that* would be a reasonable accommodation: take your medicine.

Pistol doesn't change the outcome for Plaintiff. By her own testimony, all he does is give her a 15 minute head start on taking her medicine-but she still has to take it. If she didn't have Pistol with her, Plaintiff would eventually notice that she was

having a panic attack and take her medicine.  There is no evidence that it would not be just as effective.

The best evidence of whether Plaintiff needs Pistol to participate in her rotation, or receive the full benefit of her rotation, is what happened when she had to go to the rotation without Pistol.  Nothing happened.

Defendant would remind the Court of the case of *Gleed v. AT&T Services, Inc.*, unreported, 2014 WL 3708546 (E.D. Mich. 2014), authored by the presiding judge in this case, Judge Borman.  *Gleed* presented a lawsuit under Title I of the ADA, the employment provision, not Title II.  Nevertheless, the holding is equally applicable to this case.

In *Gleed*, Plaintiff testified that he had some medical conditions which made it hard for him to stand or walk, and he wanted the option of sitting down at work. The Court dismissed the case, finding that to the extent the claim was not abandoned for failing to preserve it, "the claim fails on its merits because Plaintiff testified he did not need an accommodation to do his job.  . . .The fact he continued to work without any further requests for an accommodation. . .confirms his testimony that he did not actually need a seating accommodation."  *Id.* at *6. (Exhibit 10).

3. <u>Pistol is not a service animal</u>.

Pistol can't do anything that the Plaintiff cannot do for herself. Taking her testimony as true that she has taught Pistol to recognize *physical* cues that are indicative of an impending panic attack, the reason she could train him to do that is because *she knows* that a panic attack is coming on when she exhibits those physical symptoms. If she were claiming that Pistol were able to sense changes in her body that she was unaware of, such as, an increased heart rate, faster breathing, increased temperature, or a unique scent, then there would be an argument that Pistol knows something Plaintiff doesn't know. But that is not the case.

Moreover, the evidence does not establish that Pistol is trained to recognize a panic attack. The evidence is that he has been trained to recognize a fake panic attack, i.e., one where the Plaintiff intentionally demonstrated the physical cues that are similar to what she experiences in a panic attack, but without all of the other cues such as increased breathing and heart rate and temperature and smell that accompany a true panic attack. Simply put, all Pistol knows is when Plaintiff acts like she's going to have a panic attack. If she can accurately recreate a true panic attack then she doesn't need Pistol to tell her she's about to have one.

4.   <u>Allowing Plaintiff to bring Pistol to her rotation would fundamentally alter the nature of the rotation.</u>

As set forth above, there is an exception in the regulations to the duty for a public entity to make reasonable modifications when doing so would "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. 35.130(b)(7)(i).

Defendant doesn't choose what rotations the students request.  The nursing school will request a rotation of a certain nature and send over a list of names.  The nursing school sends a professor to instruct and supervise the students.  In other words, Hurley couldn't move Plaintiff to another floor to accommodate her.  If they reassigned her to another floor, she would no longer be in a rotation at all, with no instructor. If they reassigned her to another rotation in a different part of the hospital, it would not longer be the rotation she signed up for. For example, putting her in the neonatal ward makes it a neonatal rotation, not a post-operative rotation.  It's like signing up for a biology class but getting put in a chemistry class: you're no longer studying biology.  Ironically, reassigning Plaintiff *would* deprive her of the full benefit of the program.

Not only can Hurley not move Plaintiff, it can't move the patients.  Hurley can't move patients to a part of the hospital that is not equipped to deal with their medical needs.  It can't take a kidney dialysis patient off the kidney dialysis floor and

14

put them in a geriatrics ward without a kidney dialysis machine.  It can't put patients

who need surgical nurses in parts of the hospital where there is no surgical nurse.

Plaintiff argues that Hurley should move staff.  However, that is not as simple

in a hospital as it might be in other environments.  First, the ability to move staff

depends on staff being available.  Hurley has a "bank" of employees with various

qualifications that are "on deck" in case they are needed somewhere else in the

hospital due to a staffing shortage.  The ability to do that depends on the number of

patients on a given day and the number of staff who show up for work and are

qualified.  In this case, Hurley tried to accommodate by moving the nurse who had

the most severe allergy to Pistol, which left the floor without anyone working with

that person's qualifications.  The manager had to take over and work that person's

shift because there wasn't anybody else that could do the job.  What is Hurley

supposed to do when there are not enough qualified employees to cover for the ones

who are allergic to Pistol?  It can't sacrifice the safety of the patients by bringing in

employees who lack the requisite skill and training to work on that floor. It can't

leave the floor short handed, just to accommodate Plaintiff-that's not reasonable.

This is a union hospital.  If the "employee bank" doesn't have someone to cover,

Hurley can't just move employees willy-nilly, even if they're qualified.  It must

follow the collective bargaining agreements, which limit Hurley's ability to move

staff without notice.

Moving Plaintiff, or patients, or staff fundamentally alters the nature of the rotation.

        5.    <u>Pistol jeapardized the health and safety of patients and staff.</u>

A public entity may impose legitimate safety requirements necessary for the safe operation of its services but must insure that its safety requirements are based on actual risks, not on mere speculation.  28 C.F.R. 35.130(h).

Hurley is not banning all dogs, and it is not banning dogs from all areas of the hospital.  It is banning Pistol from the medical (surgical) floors.  And it is not doing so prophylactically in case somebody has an allergic reaction.  It granted Plaintiff's request for an accommodation, but had to withdraw it when two people had a reaction and one was at risk of it.

It is unfortunate that all places of public accommodation are at least facially treated the same under the ADA, because some have a greater need to impose legitimate safety requirements than others.  Defendant argues that if a hospital can't keep a dog out of the rooms with post-surgical patients when employees and patients have already manifested an allergy to that particular dog, the "legitimate safety requirements" affirmative defense is essentially meaningless.  Judge Patrick Kelly, U.S. District Court Judge said it well when he said:

"Service animals provide to thousands of Americans a critical means of access to the world. Federal policy as reflected in the ADA is designed to support this access. This policy, however, is not unlimited; it does not compel hospitals to jeopardize the health and safety of their patients.

*Pool v. Riverside Health Servs.,* 1995 US Dist Lexus 12724, at *13 (D. Kan, 1995).

*Pool* involved a Plaintiff with a disability who wanted to visit a family member having surgery. The hospital refused to let her bring her service animal. The ultimate analysis, and holding, was complicated and involved many issues not presented in the case involved in this motion, but Judge Kelly's statement gets to the heart of the Defendant's argument.

6.     Plaintiff failed to appropriately engage in the interactive process.

Plaintiff bears the initial burden of establishing that the requested accommodation is reasonable. *Walsh v. United Parcel Service*, 201 F.3d 718, 725 (6th Cir. 2000). The ADA requires an "interactive process," the purpose of which is to identify the precise limitations of the disability and the potential reasonable accommodations. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). The ADA mandates this process to "insure that employers do not disqualify applicants and employees based on stereotypes and generalizations about a disability, but based on the actual disability and the effect that disability has on the particular individual's ability to perform the job." *Id*. Both parties must collaborate in the

interactive process, and "when a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Lafata v. Church of Christ Home for the Aged*, 325 FedAppx. 416, 422 (6th Cir. 2009). "If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 805 (7th Cir. 2005).

"The employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations. Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1184 (6th Cir. 1996). The employer is not required to propose a counter-accommodation but doing so can be considered as evidence of good faith by the Court. If an employer takes that step and offers a reasonable counter-accommodation, "the employee cannot demand a different accommodation." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195 (6th Cir. 2010).

Plaintiff requested an accommodation. She wanted to bring her dog to the hospital and take it in all of the patient rooms. Hurley granted the request. Hurley

18

withdrew the accommodation due to the safety and welfare of staff and patients and proposed a counter reasonable accommodation: Plaintiff can have complete access to Pistol but Pistol has to stay in a separate room so he's not around the patients and the staff.  Plaintiff didn't come back with a counter.  She said no.  She *discussed* bringing a shed defender, to which Defendant did not say no.  Plaintiff stopped negotiating.  Hurley has always made it clear that it is willing to listen to proposals which will accommodate Plaintiff while also accommodating the staff and the patients.

The purpose of the interactive process is to come up with a reasonable accommodation.  Hurley should not be punished because Plaintiff abandoned this process.

> ### B.   Hurley did not discriminate against Plaintiff.

"To establish a *prima facie* case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, and denied the benefits of, or subjected to discrimination under the program because of her disability." *Tucker v. Tennessee,* 539 F.3d 526, 532 (2008).  "In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability, i.e., the plaintiff must present evidence that animus against the protected group was

a significant factor in the position taken by the municipal decision makers themselves or by those to whom the decision makers were knowingly responsive." *Tucker* at 533.

Plaintiff has to prove that Hurley wouldn't let her take Pistol with her to the hospital because she suffers from panic attacks. All of the evidence, including the fact that the accommodation was initially granted, demonstrates that Hurley's actions were based on the health and welfare of the staff and the patients and the inability to reassign Plaintiff, staff, or patients. Moreover, Plaintiff was not denied participation in the rotation. Pistol was excluded, but the Plaintiff wasn't, and she in fact finished her rotation.

The Sixth Circuit decisions in *Dillery v. City of Sandusky*, 398 F.3d 562 (6th Cir. 2005) and *Hamm v. City of Gahanna*, 109 Fed.Appx. 744 (6th Cir.2004), are instructive.

In *Dillery*, a disabled plaintiff brought an intentional-discrimination claim under the ADA against police officers who allegedly stopped her because of her disability when she was using her wheelchair on the road. 398 F.3d at 568. The Sixth Circuit rejected that claim because it found that "the police did not stop [the plaintiff] because of her disability, but rather stopped her in response to citizen complaints about her being in the roadway." *Id.*

20

In *Hamm*, the plaintiffs brought a claim under the ADA alleging that the city intentionally discriminated against them by refusing to re-zone the plaintiffs' property to allow the construction of group housing for the disabled. 109 Fed.Appx. at 747. The Sixth Circuit rejected that claim because it found that the city denied the plaintiffs' re-zoning application due to opposition from the plaintiffs' neighbors, who were concerned with the proposed group-housing project's impact on the neighborhood and its property values. See *id.* at 747–49.

In both *Dillery* and *Hamm,* the Sixth Circuit found that legitimate citizen complaints motivated the defendant city's actions. That the complaints were lodged against individuals with disabilities did not transform the cities' responses to those complaints into intentional discrimination, because it was the complaints that motivated the cities' actions, not the fact that the plaintiffs had disabilities. So too here. Hurley's refusal to let Plaintiff take *Pistol* (not all dogs) *on floors 7W and 9W* (not all floors) was in response to patient and employee complaints, and the fact that she might be disabled does not transform Hurley's reaction into intentional discrimination. In fact, Hurley continues to keep in place its General Practice for the ADA, which generally allows service animals in the hospital.

21

III.   <u>The Rehabilitation Act claim.</u>

The ADA and the Rehabilitation Act are materially indistinguishable except that the Rehabilitation Act requires evidence of receipt of federal funding (which is not disputed here).  *Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016).  Both statutes require local government to enact reasonable accommodations for persons with disabilities who use their services, and both prohibit discrimination based on disability.  Since the statutes contain similar language and are "quite similar in purpose and scope," the Court's analysis of Rehabilitation Act claims "roughly parallels" ADA claims.  *Id.*  "In light of these similarities," the Sixth Circuit has recognized that "cases construing one statute are instructive in construing another." *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 908 (6th Cir. 2004).

Dismissal of the Rehabilitation Act claim is appropriate for the same reasons the ADA claims should be dismissed.

IV.   <u>The PWDCRA claim.</u>

Like the Rehabilitation Act, the PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve plaintiff's PWDCRA claim." *Mote v. City of Chelsea*, 252 F.Supp.3d 642, 649 (E.D. Mich. 2017).

Dismissal of the PWDCRA claim is appropriate for the same reasons the ADA claims should be dismissed.

## CONCLUSION

Plaintiff's claims should be dismissed for the reasons set forth above.

Dated: <u>March 31, 2022</u>                    <u>/s/ *Michael W. Edmunds*          </u>
MICHAEL W. EDMUNDS P55748
Gault Davison, PC
Attorney for Defendant
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
(810) 234-3633
medmunds@edmundslawoffice.com

## INDEX OF EXHIBITS

Exhibit 1    Deposition of Plaintiff

Exhibit 2    Deposition of Jennifer McDermitt

Exhibit 3    Deposition of Tarnesa Martin

Exhibit 4    Hurley service dog policy

Exhibit 5    Deposition of Summer Jenkins

Exhibit 6    Morbidity and Mortality Weekly Report

Exhibit 7    Deposition of Teresa Bourque

Exhibit 8    Email

Exhibit 9    Affidavit of Peter Bade

Exhibit 10   Unpublished Opinion - *Gleed v. AT&T Services, Inc.*

A

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2022 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to plaintiff's counsel.

/s/ *Michael W. Edmunds*
MICHAEL W. EDMUNDS P55748
Gault Davison, PC
Attorney for Defendant
8305 S. Saginaw St., Ste. 8
Grand Blanc, MI 48439
(810) 234-3633
medmunds@edmundslawoffice.com

B